474 A.2d 880

**Curley L. FAULK**

v.

**STATE'S ATTORNEY FOR HARFORD COUNTY et al.**

**No. 155, Sept. Term, 1982.**

Court of Appeals of Maryland.

May 7, 1984.

494

Diana G. Motz, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellees.

Stuart L. Alison, Bel Air (James A. Close, Bel Air, on the brief), for appellant.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

DAVIDSON, Judge.

This case presents the question whether Maryland Code (1957, 1980 Repl.Vol. & 1983 Cum.Supp.), Art. 76A, §§ 1

through 5A (Maryland Public Information Act) requires the disclosure of investigatory police reports compiled for law-enforcement purposes to a defendant in a pending criminal proceeding. Resolution of this question depends upon whether production of such reports would "interfere with valid and proper law-enforcement proceedings" within the meaning of Art. 76A, § 3(b)(i)(A). More particularly, the question presented is whether under § 3(b)(i)(A), in order to deny access to investigatory police reports to a defendant in a pending criminal proceeding, the State must present particularized evidence showing that the disclosure of such reports would interfere with the pending criminal proceedings or whether under such circumstances a generic determination of interference is appropriate. The relevant statutory provisions are Art. 76A, § 1A, § 2(a), § 3(a), § 3(b)(i), §§ 5(b)(1) and (3).

Article 76A, § 1A provides in pertinent part:

"[A]ll persons are entitled to information regarding the affairs of government and the official acts of those who represent them as public officials and employees. To this end, the provisions of this act shall be construed in every instance with the view toward public access...."

Article 76A, § 2(a) provides in pertinent part:

"All public records [1] shall be open for inspection by any person at reasonable times, except as provided in this article or as otherwise provided by law."

Article 76A, § 3(a) provides in pertinent part:

"The custodian of any public records shall allow any person the right of inspection of such records or any

---

**1.** Art. 76A, § 1(b) defines public records, in pertinent part as follows: "'Public records' ... shall include any paper ... or other written document ... that [has] been made by any branch of the State government, including the legislative, judicial, and executive branches, by any branch of a political subdivision, and by any agency or instrumentality of the State or a political subdivision, or received by them in connection with the transaction of public business."

portion thereof except ... as provided in subsection (b) or (c) of this section."

Article 76A, § 3(b)(i) provides:

*"The custodian may deny the right of inspection of the following records* or appropriate portions thereof, unless otherwise provided by law, if disclosure to the applicant [2] would be contrary to the public interest:

"(i) *Records of investigations conducted by,* or of intelligence information or security procedures of, *any* sheriff, county attorney, city attorney, State's attorney, the Attorney General, *police department,* or any investigatory files compiled for any other law-enforcement, judicial, correctional, or prosecution purposes, *but the right of a person in interest* [3] *to inspect the records may be denied only to the extent that the production of them would* (A) *interfere with valid and proper law-enforcement proceedings,* (B) deprive another person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source, (E) disclose investigative techniques and procedures, (F) prejudice any investigation, or (G) endanger the life or physical safety of any person." (Emphasis added.)

Article 76A, § 5(b) provides in pertinent part:

"(1) On complaint of any person denied the right to inspect any record covered by this article, the circuit court in the jurisdiction in which ... the records are situated, has jurisdiction to enjoin the State, any county, municipality, or political subdivision, any agency, official or employee thereof, from withholding records and to order the production of any records improperly withheld from the complainant.... [T]he court may ... determine

---

**2.** Art. 76A, § 1(c) defines an applicant as "any person requesting disclosure of public records."

**3.** Art. 76A, § 1(i) defines a "person in interest" in pertinent part as "the person who is the subject of a record or any representative designated by said person...."

whether the records or any part thereof may be withheld under any of the exemptions set forth in § 3, and the burden is on the defendant to sustain its action....

.    .    .    .    .

"(3) Except as to cases the court considers of greater importance, proceedings before the court, as authorized by this section, and appeals therefrom shall take precedence on the docket over all other cases and shall be heard at the earliest practicable date and expedited in every way."

On 7 April 1981, certain invetigatory police reports concerning criminal offenses, allegedly committed by the petitioner, Curley L. Faulk (Faulk), were presented to the Grand Jury for Hartford County. On that date, Faulk was indicted for, among other things, two separate burglaries.

On 9 April 1981, in the criminal proceedings pending in the Circuit Court for Harford County, Faulk filed a request for discovery pursuant to Maryland Rule 741 seeking the production of the investigatory police reports. The State refused to produce the requested reports. On 26 January 1982, the trial court denied Faulk's discovery request. The criminal proceedings are still pending.

On 17 April 1981, Faulk made a request to the State, premised upon the Maryland Public Information Act, to inspect and copy the investigatory police reports. The State denied that request.

On 24 April 1981, in the Circuit Court for Harford County, Faulk, pursuant to Art. 76A, § 5(b), filed a "Petition to Enforce Rights Under the Public Information Act" seeking, among other things, the production of the investigatory police reports. The State filed an answer and moved for summary judgment on the ground that disclosure of the investigatory police reports would interfere with the criminal proceedings then pending against Faulk. At a hearing, the State did not present any specific evidence to show that disclosure of the investigatory police reports would interfere with the then pending criminal proceedings. Neverthe-

less, on 19 October 1981, the trial court granted the State's motion and entered an order dismissing Faulk's petition. On 4 November 1981, a motion for reconsideration was denied.

On 17 November 1981, Faulk appealed to the Court of Special Appeals. That Court affirmed the judgment of the trial court. *Faulk v. State's Attorney for Harford County*, 52 Md.App. 616, 451 A.2d 936 (1982). Faulk filed a petition for a writ of certiorari that we granted. We shall affirm the judgment of the Court of Special Appeals.

Here Faulk contends that under Art. 76A, § 3(b)(i)(A), in order to deny access to investigatory police reports to a defendant in a pending criminal proceeding, the State must present particularized evidence showing that the disclosure of such reports would interfere with the pending criminal proceeding. The State contends that under Art. 76A, § 3(b)(i)(A) a particularized case-by-case factual showing of interference is not required, and that a generic determination of interference can be made when a defendant in a pending criminal proceeding seeks access to investigatory police reports relating to pending criminal proceeding.

Similar contentions were considered by the United States Supreme Court in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). That case arose under the federal Freedom of Information Act, 5 U.S.C. § 552 (1976) (now 5 U.S.C. § 552 (1982)) (FOIA). Section 552(b)(7)(A) (Exemption 7(A)) of that Act provided that the otherwise mandatory disclosure requirements of the FOIA did not apply to investigatory records compiled for law-enforcement purposes if disclosure would "interfere with enforcement proceedings."

In *Robbins*, an employer was denied access to certain written statements contained in an investigatory file compiled by the National Labor Relations Board (Board). The statements had been made by witnesses whom the Board intended to call at a pending unfair labor practice proceeding. The question presented was whether under Exemption

7(A) the Board was required to present particularized evidence showing that the disclosure of such statements would interfere with the pending unfair labor proceeding. The Supreme Court concluded that, when an unfair labor practice proceeding was pending, a particularized factual showing was not required and that a generic determination of interference was appropriate.

In reaching this conclusion, the Supreme Court made a detailed analysis of the legislative history of the FOIA. According to the Supreme Court, the FOIA, originally enacted in 1966 by Pub.L. No. 89–487, 80 Stat. 250, then codified at 5 U.S.C. § 552 (1964 & Supp. III), was broadly conceived. Its purpose was to provide the public the right of access to government information. *See EPA v. Mink,* 410 U.S. 73, 79–80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). Its basic policy was in favor of disclosure. It mandated disclosure of certain records in the possession of certain agencies unless the requested records were within the scope of a statutory exemption. A person denied the right to inspect any record covered by the FOIA had the right to expedited judicial review. In such a judicial proceeding, the burden was on the public official denying the right to inspect to show that the requested records were within the scope of a statutory exemption. 5 U.S.C. § 552(a)(3).[4]

Nine statutory exemptions were originally embodied in the FOIA. 5 U.S.C. § 552(b). One of these, 5 U.S.C. § 552(b)(7) (Exemption 7), provided that the otherwise man-

---

4. 5 U.S.C. § 552(a)(3) provided in pertinent part:
   "On complaint, the district court of the United States ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case ... the burden is on the agency to sustain its action.... Except as to those causes the court considers of greater importance, proceedings before the district court, as authorized by this paragraph, shall take precedence on the docket over all other causes and shall be assigned for hearing and trial at the earliest practicable date and expedited in every way."

datory disclosure requirements of the FOIA did not apply to:

"investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."

With respect to the purpose of Exemption 7 as originally enacted, the Supreme Court, at 437 U.S. 224–25, 98 S.Ct. 2318, said:

"In originally enacting Exemption 7, Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case. Foremost among the purposes of this Exemption was to prevent 'harm [to] the Government's case in court,' by not allowing litigants 'earlier or greater access' to agency investigatory files than they would otherwise have." (Citations omitted.)

The Supreme Court further recognized that in 1973 and 1974, Exemption 7 was interpreted by the United States Court of Appeals for the District of Columbia Circuit as exempting investigatory files from disclosure, not only when there was a need for confidentiality because an enforcement proceeding was pending, but also when there was no need for confidentiality because such a proceeding was not contemplated, likely, imminent or pending, or when such a proceeding had been terminated. *See Center for National Policy Review on Race & Urban Issues v. Weinberger,* 502 F.2d 370, 373 (D.C.Cir.1974); *Ditlow v. Brinegar,* 494 F.2d 1073, 1074 (D.C.Cir.1974); *Aspin v. Department of Defense,* 491 F.2d 24, 30 (D.C.Cir.1973); *Weisberg v. United States Dept. of Justice,* 489 F.2d 1195, 1198 (D.C.Cir.1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). In essence, these cases indicated that access could be denied to any material characterized as "investigatory files compiled for law enforcement purposes," even in the absence of evidence to show that there

was a need for confidentiality because disclosure would have an adverse effect upon a law-enforcement proceeding.

The Supreme Court further noted that in 1974, by Pub.L. No. 93–502, § 2, 88 Stat. 1561, 1563, now 5 U.S.C. § 552(b)(7) (1982), Congress amended Exemption 7 to specify six enumerated reasons to justify the nondisclosure of investigatory records compiled for law-enforcement purposes.[5] One of these enumerated reasons, contained in Exemption 7(A), provided that the otherwise mandatory disclosure requirements of the FOIA do not apply to:

"investigatory records compiled for law enforcement purposes, *but only to the extent that the production of such records would (A) interfere with enforcement proceedings.*" 5 U.S.C. § 552(b)(7)(A) (1982) (emphasis added).

According to the Supreme Court, the purpose of Exemption 7(A) was to make clear that Exemption 7 as originally enacted did not protect material simply because it was contained in an investigatory file and did not sanction nondisclosure of investigatory records, either when there was no initial reason for confidentiality because no enforcement proceeding was contemplated or pending, or after any reason for confidentiality had ceased to exist because an enforcement proceeding had been concluded. Rather, the purpose of Exemption 7(A) was to permit nondisclosure of

---

**5.** 5 U.S.C. § 552(b)(7) provides:
"This section does not apply to matters that are—

    .        .        .        .        .

   "(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel."

investigatory records only when there was a need for confidentiality because of a pending law-enforcement proceeding. This purpose was described by the Supreme Court, at 437 U.S. 232, 98 S.Ct. 2322, as follows:

"[T]he release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against."

In determining the purpose of Exemption 7(A), the Supreme Court expressly rejected the contention that its purpose was to require that "in each case the court must determine whether the material of which disclosure is sought would actually reveal the Government's case prematurely, result in witness intimidation, or otherwise create a demonstrable interference with the particular case." 437 U.S. 234, 98 S.Ct. 2323. The Supreme Court noted that there was nothing in the language of Exemption 7(A) or in its legislative history to indicate that Congress intended that generic determinations of interference could never be made. In sum, the Supreme Court, at 437 U.S. 235–36, 98 S.Ct. 2323–24, said:

"What Congress clearly did have in mind was that Exemption 7 permit nondisclosure only where the Government 'specif[ies]' that one of the six enumerated harms is present, and the court, reviewing the question *de novo*, agrees that one of those six 'reasons' for nondisclosure applies. Thus, where an agency fails to 'demonstrat[e] that the … documents [sought] relate to any ongoing investigation or … would jeopardize any future law enforcement proceedings,' Exemption 7(A) would not provide protection to the agency's decision. While the Court of Appeals was correct that the amendment of Exemption 7 was designed to eliminate 'blanket exemptions' for Government records simply because they were found in investigatory files compiled for law enforcement purposes, we think it erred in concluding that no generic determinations of likely interference can ever be made. We conclude that Congress did not intend to prevent the

federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.' " (Citations omitted.)

Thus, the Supreme Court recognized that under Exemption 7(A) a generic determination would be appropriate when the circumstances were such that disclosure of the requested materials necessarily would interfere with enforcement proceedings.

The remaining question considered by the Supreme Court was whether the disclosure of potential witnesses' statements before completion of a pending unfair labor practice proceeding necessarily would "interfere with enforcement proceedings." In resolving this question, the Supreme Court weighed "the strong presumption in favor of disclosure under FOIA against the likelihood that disclosure at this time would disturb the existing balance of relations in unfair labor practice proceedings...." 437 U.S. 236, 98 S.Ct. 2324.

In considering the impact of disclosure of witnesses' statements during the pendency of an unfair labor practice proceeding, the Supreme Court, at 437 U.S. 236–39, 241, 98 S.Ct. 2324–25, 2326, said:

"Historically, the NLRB has provided little prehearing discovery in unfair labor practice proceedings and has relied principally on statements such as those sought here to prove its case.... A profound alteration in the Board's trial strategy in unfair labor practice cases would thus be effectuated if the Board were required, in every case in which witnesses' statements were sought under FOIA prior to an unfair labor practice proceeding, to make a particularized showing that release of these statements would interfere with the proceeding.

"Not only would this change the substantive discovery rules, but it would do so through mechanisms likely to cause substantial delays in the adjudication of unfair

labor practice charges. In addition to having a duty under FOIA to provide public access to its processes, the NLRB is charged with the duty of effectively investigating and prosecuting violations of the labor laws. To meet its latter duty, the Board can be expected to continue to claim exemptions with regard to prehearing FOIA discovery requests, and numerous court contests will thereby ensue. Unlike ordinary discovery contests, where rulings are generally not appealable until the conclusion of the proceedings, an agency's denial of a FOIA request is immediately reviewable in the district court, and the district court's decision can then be reviewed in the court of appeals. The potential for delay and for restructuring of the NLRB's routine adjudications of unfair labor practice charges from requests like respondent's is thus not insubstantial.

. . . . .

Our reluctance to override a long tradition of agency discovery, based on nothing more than an amendment to a statute designed to deal with a wholly different problem, is strengthened by our conclusion that the dangers posed by premature release of the statements sought here would involve precisely the kind of 'interference with enforcement proceedings' that Exemption 7(A) was designed to avoid.

. . . . .

"In short, prehearing disclosure of witnesses' statements would involve the kind of harm that Congress believed would constitute an 'interference' with NLRB enforcement proceedings: that of giving a party litigant earlier and greater access to the Board's case than he would otherwise have." (Footnotes omitted) (citations omitted).

Thus, the Supreme Court determined that disclosure of witnesses' statements during the pendency of an unfair labor practice proceeding would substantially alter the Board's substantive discovery rules and cause substantial

delays in the adjudication of unfair labor practice charges. Consequently, the Supreme Court concluded that such disclosure necessarily would constitute interference with Board enforcement proceedings.

The Supreme Court additionally determined that the basic purpose of the FOIA would not be defeated by deferring disclosure of witnesses' statements until the completion of enforcement proceedings. In reaching this result, the Supreme Court, at 437 U.S. 242, 98 S.Ct. 2327, said:

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed. Respondent concedes that it seeks these statements solely for litigation discovery purposes, and that FOIA was *not* intended to function as a private discovery tool. Most, if not all, persons who have sought prehearing disclosure of Board witnesses' statements have been in precisely this posture—parties respondent in Board proceedings. Since we are dealing here with the narrow question whether witnesses' statements must be released five days prior to an unfair labor practice hearing, we cannot see how FOIA's purposes would be defeated by deferring disclosure until after the Government has 'presented its case in court.'" (Emphasis in original) (footnotes omitted) (citations omitted).

Finally, in determining that the witnesses' statements need not be disclosed, the Supreme Court, at 437 U.S. 243, 98 S.Ct. 2327, said:

"It was Congress' understanding, and it is our conclusion, that release of such statements *necessarily 'would interfere'* in the statutory sense with the Board's 'enforcement proceedings.'" (Emphasis added.)

Thus, the Supreme Court concluded that, because the disclosure of witnesses' statements necessarily "would interfere" with a pending unfair labor practice proceeding and because the FOIA's purpose would not be defeated by deferring disclosure until completion of a pending unfair labor prac-

tice proceeding, the Board was not required to present particularized evidence showing interference. Rather, a generic determination of interference was appropriate.

■■■ Where the purpose and language of a federal statute are substantially the same as that of a later state statute, interpretations of the federal statute are ordinarily persuasive. *See, e.g., East v. Gilchrist,* 293 Md. 453, 459, 445 A.2d 343, 345 (1982); *James v. Prince George's County,* 288 Md. 315, 330, 418 A.2d 1173, 1181 (1980); *Comptroller of the Treasury v. Mandel etc. Re-election Committee,* 280 Md. 575, 580, 374 A.2d 1130, 1133 (1977); *Montgomery County Board of Education v. Glassman Construction Co.,* 245 Md. 192, 202–04, 225 A.2d 448, 454–55 (1967). The purpose of the Maryland Public Information Act, enacted by Chapter 698 of the Laws of 1970, is virtually identical to that of the FOIA, enacted in 1966 by Pub.L. No. 89–487, 80 Stat. 250. The Maryland Public Information Act, like the FOIA, was broadly conceived. Its purpose was to provide the public the right to inspect the records of the State government or of a political subdivision. *A.S. Abell Publishing Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983). Its basic policy was in favor of disclosure. Art. 76A, § 1A. Additionally, the language of Art. 76A, § 3(b)(i), as amended by Chapter 1006 of the Laws of 1978, the general exemption of investigatory records compiled for law-enforcement purposes, is virtually identical to the language of its federal counterpart, Exemption 7,[6] as amended in 1974 by Pub.L. No. 93–502, § 2, 88 Stat. 1561, 1563. Moreover, the historical development of Art. 76A, § 3(b)(i)(A) parallels that of its federal counterpart, Exemption 7(A). Under these circumstances, the Supreme Court's interpretation of Exemption 7(A) is persuasive.

■■■ More particularly, the Maryland Public Information Act, like the FOIA, mandates disclosure of certain records in the possession of certain agencies unless the requested

---

**6.** *See* note 5 above.

records are within the scope of a statutory exemption. *Superintendent, Maryland State Police v. Henschen,* 279 Md. 468, 473, 369 A.2d 558, 561 (1977). A person denied the right to inspect any record covered by the Maryland Public Information Act has the right to expedited judicial review. Art. 76A, §§ 5(b)(1) and (3). In such a judicial proceeding, the burden is on the public official denying the right to inspect to show that the requested records are within the scope of a statutory exemption. Art. 76A, § 5(b)(1).

Sixteen statutory exemptions were originally embodied in the Maryland Public Information Act. Md.Code (1957, 1969 Repl.Vol., 1970 Supp.), Art. 76A, § 3. One of these exemptions, contained in Art. 76A, § 3(b)(i), provided that the otherwise mandatory disclosure requirements of the Maryland Public Information Act did not apply to:

"Records of investigations conducted by, or of intelligence information or security procedures of, any sheriff, county attorney, city attorney, the Attorney General, police department or any investigatory files compiled for any other law enforcement or prosecution purposes."

This exemption was subsequently interpreted by this Court in *Superintendent, Maryland State Police v. Henschen,* 279 Md. 468, 369 A.2d 558 (1977). There this Court determined that records of investigations conducted by a police department or sheriff's office or any of the other law-enforcement agencies specifically listed in Art. 76A, § 3(b)(i) were exempt from disclosure, even in the absence of a particularized showing that the records were compiled for law-enforcement or prosecution purposes. *Henschen,* 279 Md. at 475, 369 A.2d at 562. In essence, this case established that access could be denied to any material characterized as investigatory records of one of the agencies enumerated in Art. 76A, § 3(b)(i), even in the absence of evidence to show that there was a need for confidentiality because disclosure would have an adverse effect upon a law-enforcement proceeding.

By Chapter 1006 of the Laws of 1978, the General Assembly amended Art. 76A, § 3(b)(i) to specify seven enumerated reasons to justify the nondisclosure of investigatory records compiled for law-enforcement purposes. One of these enumerated reasons, contained in § 3(b)(i)(A), provides that the otherwise mandatory disclosure requirements of the Maryland Public Information Act do not apply to investigatory records compiled for law-enforcement purposes, but "only to the extent that the production of them would (A) interfere with valid and proper law-enforcement proceedings."

In light of the historical development of Art. 76A, § 3(b)(i)(A), we are persuaded that the purpose of the amendment was to make clear that § 3(b)(i) did not protect material simply because it was characterized as an investigatory record of a statutorily enumerated agency and did not sanction nondisclosure of investigatory records, either when there was no initial reason for confidentiality because no enforcement proceeding was contemplated or pending, or after any reason for confidentiality had ceased to exist because an enforcement proceeding had been concluded. Indeed, the purpose of § 3(b)(i)(A) was to permit nondisclosure of investigatory records compiled for law-enforcement purposes only when there was a need for confidentiality because of a contemplated or pending law-enforcement proceeding. There is nothing in the language or the legislative history of § 3(b)(i)(A) to indicate that the General Assembly intended to require a case-by-case showing that disclosure would reveal the State's case prematurely, result in delay or otherwise create a demonstrable interference with the particular case, and that generic determinations of interference could never be made. Thus, we conclude that the General Assembly did not intend to preclude generic determinations of interference when the circumstances were such that disclosure of the requested materials necessarily "would interfere" with law-enforcement proceedings.

We are persuaded that the rationale underlying the Supreme Court's conclusion in *Robbins* that under Exemption 7(A) a generic determination was appropriate because dis-

closure of witnesses' statements during the pendency of an unfair labor practice proceeding necessarily would "interfere with enforcement proceedings" is applicable here in determining whether under Art. 76A, § 3(b)(i)(A) the disclosure of investigatory police reports during the pendency of a criminal proceeding necessarily would "interfere with valid and proper law-enforcement proceedings." The same special dangers that premature disclosure would present in the context of an unfair labor practice proceeding would also be present in the context of a criminal proceeding. *See Barney v. IRS,* 618 F.2d 1268, 1273 (8th Cir.1980); *Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d 724, 731 n. 19 (5th Cir.1977), *rev'd,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *United States v. Murdock,* 548 F.2d 599, 602 (5th Cir.1977); *Fruehauf Corp. v. Thornton,* 507 F.2d 1253, 1254 (6th Cir.1974); *Steinberg v. IRS,* 463 F.Supp. 1272, 1274 (S.D.Fla.1979); *Kanter v. IRS,* 433 F.Supp. 812, 818–19 (N.D.Ill.1977).

In our view, the disclosure of investigatory police reports to a defendant in a pending criminal proceeding would substantially alter the substantive criminal discovery rules. Here the parties agree that disclosure of investigatory police reports is not mandated by Md.Rule 741. Thus, there can be no question but that disclosure under the Maryland Public Information Act would effectively expand Maryland's substantive criminal discovery rules. Consequently, disclosure necessarily would "interfere with valid and proper law-enforcement proceedings" because it would give a defendant in a pending criminal proceeding earlier or greater access to the State's case than would otherwise be available.

Moreover, the utilization of the Maryland Public Information Act to obtain disclosure of information for use in a pending criminal proceeding not otherwise mandated by Md.Rule 741 creates a substantial likelihood of delay in the adjudication of that criminal proceeding. Ordinarily, discovery rulings are not appealable until there is a final judgment. *Sigma Reproductive Health Center v. State,*

297 Md. 660, 667, 467 A.2d 483, 486 (1983); *Kardy v. Shook,* 237 Md. 524, 534, 207 A.2d 83, 88 (1965); *Montgomery County Council v. Kaslow,* 235 Md. 45, 50, 200 A.2d 184, 186 (1964); *Alford v. Commissioner of Motor Vehicles,* 227 Md. 45, 47, 175 A.2d 23, 24 (1961). In contrast, a public official's denial of a Maryland Public Information Act request is immediately reviewable in a circuit court, Art. 76A, §§ 5(b)(1) & (3), and the circuit court's decision can then be reviewed on appeal.[7] Consequently, the utilization of the Maryland Public Information Act to obtain disclosure of investigatory police reports not otherwise mandated by Md.Rule 741 necessarily would "interfere with valid and proper law-enforcement proceedings."

We are persuaded that the disclosure of investigatory police reports to a defendant in a pending criminal proceeding would substantially alter the substantive criminal discovery rules and cause substantial delays in the adjudication of a criminal proceeding. Consequently, such disclosure necessarily would "interfere with valid and proper law-enforcement proceedings." We are further persuaded that the Maryland Public Information Act was not intended to be a device to enlarge the scope of discovery beyond that provided by the Maryland Rules or to delay ongoing litigation. Moreover, we are not persuaded that the purpose of the Maryland Public Information Act would be defeated by deferring the disclosure of investigatory police reports until the termination of a criminal proceeding. Under these circumstances, we conclude that the strong presumption in favor of disclosure under the Maryland Public Information

---

**7.** We recognize that Art. 76A, § 5(b)(3) provides that Maryland Public Information Act proceedings are to be expedited. Nevertheless, the instant case is itself illustrative of the delay resulting from the utilization of the Maryland Public Information Act to obtain disclosure of information for use in a pending criminal proceeding. In this case, criminal proceedings were instituted against Faulk on 7 April 1981. Faulk's complaint that the State had denied him the right to inspect and copy the investigatory police reports was filed in the Circuit Court for Harford County on 24 April 1981. The criminal proceedings instituted on 7 April 1981 are still pending.

Act is outweighed by the likelihood that the disclosure of investigatory police reports to a defendant in a pending criminal proceeding would disturb the existing balance of relations in criminal proceedings.

Accordingly, we now hold that under Art. 76A, § 3(b)(i)(A) the State is not required to make a particularized showing that the disclosure of investigatory police reports compiled for law-enforcement purposes to a defendant in a pending criminal proceeding would interfere with that pending criminal proceeding. Rather, a generic determination of interference can be made whenever a defendant in a pending criminal proceeding seeks access to investigatory police reports relating to that pending criminal proceeding. In short, the Maryland Public Information Act does not require the disclosure of investigatory police reports compiled for law-enforcement purposes to a defendant in a pending criminal proceeding.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS TO BE PAID BY PETITIONER.