Department of Labor
No. 2000-548

## APPEAL OF BARRY S. LEONARD, SR.

## (New Hampshire Department of Labor)

Argued: February 7, 2002
Opinion Issued: April 16, 2002

*Soule, Leslie, Kidder, Sayward & Loughman, P.L.L.C.*, of Salem (*Robert P. Leslie* and *Diane M. Gorrow* on the brief, and *Mr. Leslie* orally), for the petitioner.

*Leeming Law, PLLC*, of Concord (*Simon C. Leeming* on the brief and orally), for the respondent, Fred Fuller Oil Company, Inc.

BROCK, C.J. The petitioner, Barry S. Leonard, Sr., appeals the decision of the New Hampshire Department of Labor (DOL) dismissing his claim that his employer, Fred Fuller Oil Company, Inc. (Fuller Oil), violated the Whistleblowers' Protection Act (Act). *See* RSA 275-E:2 (1999). The DOL ruled that Leonard did not report a violation of law within the meaning of the Act and failed to satisfy the requirements of RSA 275-E:4 (1999). We reverse and remand.

The historical facts of this case are described in detail in *Appeal of Fred Fuller Oil Co., Inc.*, 144 N.H. 607, 611 (2000), in which we clarified the standard for reporting a violation under RSA 275-E:2, I(a) (section two) of the Act, vacated the decision of the DOL and remanded for further proceedings. Here, we reiterate the critical facts, referencing *Appeal of Fred Fuller Oil* for those details that assist in providing a more complete understanding of the events.

Fuller Oil employed Leonard as a fuel-oil delivery driver until his discharge on January 12, 1996. During the winter months of 1996, the harsh weather caused an increase in customer use and need for oil. As a result, Leonard and other fuel-delivery drivers worked long hours to meet customer demand. Indeed, throughout December 1995 and early January 1996, Leonard worked in excess of sixty hours per week, Monday through Saturday. *Appeal of Fred Fuller Oil*, 144 N.H. at 608. Sunday was his only scheduled day off during this period. On January 10, 1996, Fuller Oil

posted a notice at Leonard's place of employment indicating that the company needed volunteers to deliver oil on Sunday, January 14. Because no fuel-oil delivery drivers volunteered, on January 12 Fuller Oil mandated that its employees work on Sunday, January 14 and ordered that "if anyone had a problem" they should speak directly to the president, Fred Fuller. In *Appeal of Fred Fuller Oil*, we noted that on January 10, 1996, "the Federal Highway Administration of the United States Department of Transportation declared a regional emergency pertaining to the transportation of heating fuels in New Hampshire, thereby suspending certain maximum driving-time limitations for fuel-oil delivery drivers." *Id.* Although the emergency declaration expressly suspended federal maximum driving-time limitations, *see* 49 C.F.R. § 395.3(a), (b) (2001), it had no effect upon the federal ill or fatigued operator regulation. *See* 49 C.F.R. § 392.3 (2001). Further, contrary to the finding of the DOL, the declaration made no mention of suspending any State statute or regulation.

On the afternoon of January 12, Leonard contacted Fuller to inform him that he could not work on Sunday. In *Appeal of Fred Fuller Oil*, 144 N.H. at 608, we noted that Leonard testified:

> I told [Fuller] I need a day off, I was tired. My wife was coming down with another MS attack where her eyes get blurry and she was getting really stressed out from all the hours I was working and I need to spend some time with her and I had also planned a snowmobile trip for that Sunday afternoon.

At the DOL hearing upon remand, Leonard testified that he called Fred Fuller and told him: "I was not going to work this Sunday [because] I was tired and needed a day off." Leonard also testified at this hearing that he told Fred Fuller that his wife was ill and that he had planned a family snowmobile trip on Sunday.

The conversation became heated and Fred Fuller told Leonard that "everyone was tired," and that if Leonard refused to work on Sunday, he should return the oil truck and he would be fired. Shortly thereafter, Leonard dropped off his truck and did not return to work. At the time of the conversation on January 12, Leonard "did not think [Fuller Oil] could require him to work on Sunday." Fred Fuller never notified Leonard of the emergency declaration and its potential effect on any law or rule regulating the work hours of commercial drivers.

Leonard brought a claim under section two of the Act, asserting that he was wrongfully discharged by Fuller Oil for reporting alleged violations of laws and rules regulating employee time off and commercial driver safety. Section two of the Act provides, in pertinent part:

> I. No employer shall discharge, threaten, or otherwise discriminate against any employee regarding such employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (a) The employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States . . . .

Specifically, Leonard claimed that he was discharged for reporting Fuller Oil's alleged violations of RSA 275:33 (1999) (day of rest statute) and 49 C.F.R. § 392.3.

In *Appeal of Fred Fuller Oil*, the central issue was whether Leonard "reported" a violation to Fuller Oil under section two and whether Fuller Oil discharged him as a result of the alleged report. *Appeal of Fred Fuller Oil*, 144 N.H. at 610-11. As the Act does not define what constitutes a "report," we concluded that an employer is presumed to be familiar with the laws and regulations governing its business. *Id.* at 611. Therefore, a report is made under section two "if a reasonable employer would have understood from an employee's complaint that the employee was reciting a violation of law." *Id.*

Although the hearing officer in *Appeal of Fred Fuller Oil* determined that Fuller Oil violated section two, his findings actually supported a violation of RSA 275-E:3 (section three), a claim not brought by Leonard. *Id.* at 609. Because the hearing officer failed to make findings that Leonard's complaint constituted a report under RSA 275-E:2, I(a) and that he was discharged as a result of the report, we vacated the DOL's decision and remanded for further proceedings, if necessary, to determine these issues. *Id.* at 611-12. We also noted Fuller Oil's argument that Leonard did not satisfy the requirements of RSA 275-E:4, I, "which provides that an employee seeking a DOL hearing under either section two or section three [of the Act] must first make a reasonable effort to maintain or restore such employee's rights through any grievance procedure or similar process available at such employee's place of employment." *Id.* at 612 (quotation and brackets omitted). We did not reach the merits of this argument, noting only that upon remand, the DOL "may make further findings and rulings" regarding Fuller Oil's argument under RSA 275-E:4, I. *Id.*

After hearing upon remand, the DOL found that: (1) based upon the conversation between Fred Fuller and Leonard, a reasonable employer would not have considered Leonard's complaint as "'blowing the whistle' on [Fuller Oil]" because it made Sunday a mandatory work day; and (2)

Leonard failed to satisfy the requirements of RSA 275-E:4, I, by not availing himself of Fuller Oil's "open door policy." The DOL also found that Leonard actually quit his employment and therefore was not discharged by Fuller Oil.

On appeal, Leonard challenges all of these findings. Our review is governed by RSA 541:13 (1997). Accordingly, we will reverse the agency only if it made an error of law or if we are satisfied, by a clear preponderance of the evidence, that the agency's order was unjust or unreasonable. *Appeal of Fred Fuller Oil*, 144 N.H. at 609.

In the context of a whistleblower's claim, questions of law are "resolved in a way which best effectuates the manifest purposes of the [A]ct; namely, to encourage employees to come forward and report violations without fear of losing their jobs and to ensure that as many alleged violations as possible are resolved informally within the workplace." *Appeal of Osram Sylvania*, 142 N.H. 612, 617 (1998) (citation and quotation omitted). The agency's factual findings, however, are presumed to be *prima facie* lawful and reasonable and "[t]his presumption may be overcome only by a showing that there was no evidence from which the agency could conclude as it did." *Appeal of Fred Fuller Oil*, 144 N.H. at 609 (quotation and brackets omitted).

Leonard first argues the DOL erred when it determined that he did not make a report under RSA 275-E:2, I(a). As Leonard alleged that he was wrongfully discharged by Fuller Oil for reporting its alleged violation of RSA 275:33 and 49 C.F.R. § 392.3, the DOL was charged with determining whether a reasonable employer would have understood from Leonard's complaint that he was reciting a violation of: (1) the State day of rest statute; or (2) the federal ill or fatigued operator regulation. *See id.* at 611.

Because the ultimate determination of whether Leonard reported a violation requires an examination of RSA 275:33 and 49 C.F.R. § 392.3 and the application of the "reasonable employer" legal standard to the historical facts, it is not merely a factual question but a mixed question of law and fact. *See Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 282 (1992) (mixed questions of law and fact concern the application of a rule of law to the facts and the consequent determination of whether the rule is satisfied); *see also State v. Ford*, 144 N.H. 57, 62 (1999). Here, the DOL's findings as to the content of Leonard's complaint and the surrounding circumstances are supported by competent evidence in the record, except its finding that the emergency declaration allowed fuel-delivery drivers to work seven days a week. Therefore, what remains is the question of whether "a reasonable employer would have understood from [Leonard's] complaint that [he] was reciting a violation of [RSA 275:33 or 49 C.F.R. § 392.3]." *Appeal of Fred Fuller Oil*, 144 N.H. at 611.

Generally, the "reasonable person" assessment involves a question of fact for the fact finder. Here, however, the DOL, acting in a quasi-judicial role, determined whether a complaint constituted a "report" within the meaning of the Act. Such a determination calls upon the agency to interpret and apply our decisional law and establish a meaningful standard of "reporting" to guide future agency decisions. *Cf. Thompson v. Keohane,* 516 U.S. 99, 114-15 (1995). Therefore, we view the critical question in this case as one of law appropriate for us to answer in the first instance as the agency is " 'not in an appreciably better position than we to do so.' " *Ford,* 144 N.H. at 63 (*quoting Thompson,* 516 U.S. at 115).

We turn first to whether Leonard reported a violation of the day of rest statute. RSA 275:33 states:

> No employer shall operate any such business on Sunday unless he has posted in a conspicuous place on the premises a schedule containing a list of employees who are required or allowed to work on Sunday and designating the day of rest for each . . . . No employee shall be required or allowed to work on the day of rest designated for him.

The purpose of such a statute is to provide employees "a day of rest, repose, recreation and tranquility." *State v. Rogers,* 105 N.H. 366, 370 (1964) (quotation omitted).

Although an emergency declaration was issued that suspended certain federal regulations, the declaration was silent as to the suspension of State laws and regulations. Because we presume that Fuller Oil was "familiar with the laws and regulations governing its business," a reasonable employer in its shoes would not have assumed that the State day of rest statute was thereby suspended. *Appeal of Fred Fuller Oil,* 144 N.H. at 611. Here, Fuller Oil's requirement that all employees work on Sunday directly conflicted with Leonard's scheduled day off. Those employees that "had a problem" with the Sunday work requirement were directed to personally contact Fred Fuller. The very nature of the circumstances suggests that employees were encouraged to report their objections to the mandatory Sunday work requirement. Leonard, believing that Fuller Oil could not require him to work on his day off, contacted Fred Fuller to object. He complained to Fred Fuller that he was tired and would not work on Sunday because he needed a day off. Leonard also recited other reasons in support of his objection to working on Sunday.

Regardless of Leonard's supporting reasons for wanting Sunday off, which we note were consistent with the purpose of RSA 275:33, *see Rogers,* 105 N.H. at 370, given that Fuller Oil's mandate to work on Sunday directly conflicted with Leonard's only scheduled day off, a reasonable

employer would have understood Leonard's refusal to work that day as alleging a violation of the day of rest statute. *See* RSA 275:33 ("No employee shall be required or allowed to work on the day of rest designated for him."). Mindful that the Act "does not expressly require a reporting employee to cite to the alleged violation," *Appeal of Fuller Oil*, 144 N.H. at 610, faulting Leonard for failing to expressly reference the day of rest statute would undermine this tenet. Further, our conclusion here is consistent with the purpose of the Act; namely, to encourage employees to report violations and promote the informal resolution of such reports within the workplace. *See Appeal of Osram Sylvania*, 142 N.H. at 617 (in context of whistleblowers' claims, questions of law resolved in a manner which "best effectuates the manifest purpose of the [A]ct").

■ We find that Leonard's complaint constituted a report of an alleged violation of RSA 275:33 within the meaning of the Act. As such, there is no need to decide whether Leonard's complaint also constituted a report of an alleged violation of 49 C.F.R. § 392.3. Because Fuller Oil concedes that if Leonard made a valid report, its actions in response would constitute a discharge, threat or discriminatory act prohibited by RSA 275-E:2, I(a), we also need not address whether Leonard's report was causally connected with his discharge, *see Appeal of Fuller Oil*, 144 N.H. at 611 (employer's wrongful act must result from report), nor whether Leonard was fired or quit.

■ We now turn to the DOL's finding that Leonard failed to avail himself of Fuller Oil's alleged open door policy. Under RSA 275-E:4, I, an employee seeking a DOL hearing under RSA 275-E:2, I(a) or (b) must "first ma[ke] a reasonable effort to maintain or restore such employee's rights through any grievance procedure or similar process available at such employee's place of employment." Here, the DOL found that Fuller Oil maintained an open door policy, whereby employees could bring their grievances to Fred Fuller. The DOL concluded that this policy is in effect even after an employee is discharged from Fuller Oil, and that Leonard failed to avail himself of it after his separation from the company. We disagree.

The record unequivocally demonstrates that Fuller Oil specifically directed its employees to grieve the company's mandate to work on Sunday to Fred Fuller. In his testimony, Fred Fuller stated that Leonard's telephone call on January 12 was an exercise of the open door policy. Regardless of whether some ex-employees had allegedly availed themselves of the policy after quitting or being fired, the company expressly stated what the grievance process would be under the

circumstances of this case. Leonard made a reasonable effort to avail himself of this process when he called Fred Fuller on January 12. It is unjust and unreasonable to now charge the employee with failing to do anything more.

Accordingly, we hold that the order of the DOL was unjust and unreasonable. As we have determined that Leonard satisfied the requirements of both RSA 275-E:2, I(a) and 275-E:4, I, we remand this matter to the DOL for a hearing on the appropriate remedy.

*Reversed and remanded.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; NADEAU, DALIANIS and DUGGAN, JJ., concurred.