835 A.2d 169

Sheila **MONTGOMERY**

**v.**

**EASTERN CORRECTIONAL INSTITUTION, et al.**

**No. 13, Sept. Term, 2003.**

Court of Appeals of Maryland.

Nov. 10, 2003.

**616**

Robin R. Cockey (Cockey Brennan & Maloney, P.C.) of Salisbury, for petitioner.

Scott S. Oakley, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), of Baltimore, for respondents.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

On 9 September 1999, Petitioner, Sheila Montgomery, an administrative assistant in the Warden's Office at the Eastern Correctional Institution ("the ECI") in Westover, Maryland, filed a personnel grievance against her then supervisor, the Acting Warden, George Kaloroumakis. Approximately two months later, Montgomery was reassigned by the newly appointed Warden, Robert Kupec, to an administrative assistant position, at the same pay and classification, in the ECI's

Maintenance Department. Montgomery, a few months after that event, filed a "Whistleblower" complaint with the Secretary of the Maryland Department of Budget and Management ("the Department") that Montgomery contends comes within the ambit of subtitle 3 of section 5 of the State Personnel and Pensions Article of the Maryland Code (1993, 1997 Repl.Vol.), entitled "Maryland Whistleblower Law in the Executive Branch of State Government" ("Whistleblower Law"). In sum, Montgomery there complained that her reassignment was in retaliation for having filed the initial personnel grievance against Kaloroumakis. The Department found no merit in Montgomery's "Whistleblower" complaint. Montgomery then appealed that action to the Maryland Office of Administrative Hearings ("OAH").

An administrative law judge ("ALJ") of the OAH, relying on federal precedent interpreting the federal Whistleblower Protection Act ("WPA") upon which the Maryland statute was based, ruled that the information contained in Montgomery's "Whistleblower" complaint "challenging the actions of a supervisor towards an employee is not a protected disclosure" within the meaning of the Maryland Whistleblower Law.[1] The ALJ ruled further that Montgomery's complaint did not allege

---

**1.** Section 5–305 reads:

**Disclosure of information—Reprisal prohibited.**

Subject to the limitations of § 5–306 of this subtitle, a supervisor, appointing authority, or the head of a principal unit may not take or refuse to take any personnel action as a reprisal against an employee who:

(1) discloses information that the employee reasonably believes evidences:

(i) an abuse of authority, gross mismanagement, or gross waste of money;

(ii) a substantial and specific danger to public health or safety; or

(iii) a violation of law; or

(2) following a disclosure under item (1) of this section seeks a remedy provided under this subtitle or any other law or policy governing the employee's unit.

Section 5–306 provides:

**Same—Protected disclosures.**

Section 5–305 of this subtitle applies to a disclosure that is specifically prohibited by law only if that disclosure is made exclusively to the Attorney General in the manner allowed in § 5–313 of this subtitle.

facts sufficient to show that she had made disclosures that were protected by Maryland's Whistleblower Law.

Montgomery filed a petition for judicial review of the ALJ's decision in the Circuit Court for Somerset County. After a hearing, the judge concluded that Montgomery's complaint about the behavior of her supervisor is not a protected disclosure under Maryland's Whistleblower Law and affirmed the ALJ.

Regarding Montgomery's direct appeal, the Court of Special Appeals, in an unreported opinion, affirmed. We granted Montgomery's petition for writ of certiorari, *Montgomery v. Eastern Correctional*, 374 Md. 358, 822 A.2d 1224 (2003), to consider the question:

1. Has a State employee who has filed a grievance about the behavior of her supervisor, complaining that he has created a hostile work environment that is detrimental to her career, made a "protected disclosure" under Maryland Code section 5–305 of the Maryland Whistleblower Act, in the State Personnel & Pensions Article?

I.

Sheila Montgomery, prior to 8 November 1999, was for a number of years an administrative aide in the Warden's Office at the ECI. She served as a personnel liaison between the Warden and staff members at the ECI and was responsible for maintaining the Warden's calendar and drafting letters for his signature. In June 1999, Warden Ralph Logan left the ECI and was replaced, on a temporary basis, by Acting Warden George Kaloroumakis. Between June and September 1999, Montgomery served as an administrative aide to Acting Warden Kaloroumakis.

On 9 September 1999, Montgomery filed a grievance with the State Personnel Management System complaining about the Acting Warden's behavior towards her. Under the section of the form asking Montgomery to state her grievance, she wrote: "Ongoing and continuing harassment by the Acting Warden (George Kaloroumakis) which constitutes a hostile

work environment or places me in a hostile work environment." Under the heading "The issues of fact and law that support the employee's appeal," she stated:

The derogatory demeanor and belittling comments of the Acting Warden ... in my opinion create a hostile work environment which is detrimental to my career with the State of Maryland and creates a hostile work place. I feel his behavior violates Executive Order 01.01.1995.19 Code of Fair Employment Practices.[2]

The remedy sought in Montgomery's grievance was that she wish[ed] to be able to be given the opportunity to perform [the] functions of [her] classification and that the State provide meaningful conflict resolution which would be agreeable to both parties of the grievance and that proper and adequate sensitivity training be provided.

---

2. The Executive Order found at COMAR 01.01.1995.19, entitled Code of Fair Employment Practices, provides in Article I—Equal Employment Opportunity Program in State Government:

A. All personnel actions concerning any employee or applicant for employment in the Executive Branch will be taken on the basis of merit and fitness, and without regard to:

(1) Age;
(2) Ancestry;
(3) Color;
(4) Creed;
(5) Marital status;
(6) Mental or physical disability;
(7) National origin;
(8) Race;
(9) Religious affiliation, belief or opinion;
(10) Sex, or
(11) Sexual orientation.

B. All personnel actions concerning any classified employee or applicant for employment in the classified service shall be without regard to political affiliation, belief or opinion.

C. The harassment of employees on the basis of any reason prohibited by law is not permitted....

Article II—Complaints of Discrimination and Unfair Employment Practices, provides in part that

[n]o employee shall be harassed or otherwise retaliated against for filing a complaint of discrimination or other unfair employment practice, providing information in support of any such complaint or testifying, assisting or participating in any phase of an investigation of any unfair employment practice.

As previously related, the newly appointed Warden Kupec transferred Montgomery on 9 November 1999 from her administrative assistant's position in the Warden's Office to one in the ECI's Maintenance Department. In addition to the physical surroundings of her new workplace not being as nice as in the Warden's Office, Montgomery observed that her secretarial duties became less challenging and fulfilling and generally that the prestige of her new position was less. Nevertheless, she suffered no decrease in classification or pay.[3]

Consequently, about six months after filing the personnel grievance and four months' service in her new position, Montgomery wrote a letter (the "Whistleblower" complaint), dated 20 March 2000, to Frederick W. Puddester, the Secretary of the State Department of Budget and Management. In the "Whistleblower" complaint, she alleged that the November 1999 transfer was a reprisal for filing her grievance against Acting Warden Kaloroumakis.

In her "Whistleblower" complaint, Montgomery explained that Kaloroumakis referred to office workers as "peons" and "made disparaging remarks about our income and social standing." When she and a co-employee attempted to bring to his attention their objections regarding his behavior, Kaloroumakis reportedly acknowledged making "the discourteous remarks attributed to him" and also admitted that he "ex-

---

**3.** In a separate action filed in the U.S. District Court for the District of Maryland, Montgomery claimed that her transfer constituted retaliation under the federal Family and Medical Leave Act ("FMLA") for taking an extended leave. This claim was twice rejected by the District Court and, in a *per curiam* opinion, the dismissal of the suit was affirmed by the U.S. Court of Appeals for the Fourth Circuit. The Fourth Circuit held that the position to which she had been transferred was an "equivalent position," virtually identical to her former position in terms of pay, benefits, and working conditions, including privileges, perquisites and status. *Montgomery v. State of Maryland,* No. 02–1998, 2003 WL 21752919, 2003 U.S. App LEXIS 15068 (4th Cir. July 30, 2003) (per curiam). Thus it is not clear that Montgomery could prove that she suffered a reprisal for filing the grievance against Kaloroumakis. Reading Montgomery's grievance in the light most favorable to her, we nonetheless shall assume for purposes of this opinion that her subsequent transfer to an "equivalent position" was a reprisal.

press[ed] himself in a manner 'locals' might consider sarcastic or even abrasive." Kaloroumakis summarily rejected their complaints by saying that "such behavior was the norm in his native New York."

Montgomery's "Whistleblower" complaint letter was referred by Secretary Puddester to the Office of the Statewide Equal Employment Opportunity ("EEO") Coordinator.[4] On 2 June 2000, the Acting Statewide EEO Coordinator wrote a letter to Montgomery advising her that the evidence of record did not support her allegations that she had made a protected disclosure under the Whistleblower Law and that, accordingly, no violation of that Act was found.

Montgomery noted an appeal to the OAH, pursuant to Md.Code (1993, 1997 Repl.Vol.), § 5–310 of the State Personnel and Pensions Article.[5] The ECI responded by filing a "Motion for Summary Decision."[6] In that motion, the ECI contended that the information contained in Montgomery's grievance did not constitute a "protected disclosure" under the Whistleblower Law. The ALJ treated the ECI's "motion for summary decision" as a motion to dismiss on the ground that the complaint failed to state a cause of action upon which relief could be granted. Accordingly, the ALJ treated all allega-

---

4. Pursuant to Md.Code (1993, 1997 Repl.Vol.), § 5–309(c)(1)(i) of the State Personnel and Pensions Article, the Secretary may refer a "Whistleblower" investigation to a designee.

5. Section 5–310 of the State Personnel and Pensions Article provides, in relevant part:
 **Appeals.**
 (a) *When permitted.*—A complainant may appeal to the Office of Administrative Hearings:
 (1) within 10 days after receiving a decision under § 5–309 of this subtitle; or
 (2) when a decision is not issued within 60 days after the complaint is filed and the complainant requests a hearing.

6. Maryland Code (1974, 1999 Repl.Vol., 2003 Cum.Supp.), § 10–210(6) of the State Government Article, authorizes the OAH, unless precluded by law, to dispose of a contested case by, among other vehicles, "summary disposition." *See Eng'g Mgmt. Servs. v. Md. State Highway Admin.*, 375 Md. 211, 225, 825 A.2d 966, 974 (2003).

tions in Montgomery's complaint as true. Relying on federal precedent interpreting and applying the WPA, upon which the Maryland statute was based, the ALJ ruled that "challenging the actions of a supervisor towards an employee is not a protected disclosure" under the Maryland Whistleblower Law. Alternatively, the ALJ ruled that the type of information disclosed by Montgomery in her complaint was not protected by the Act because (1) the disclosure was "not a matter of interest to the greater public" and (2) the "disclosure in the grievance in no way addressed the fiscal, health, or safety concerns of the public at large, which is an essential element of a" claim under the State Whistleblower Law. On those grounds, the ALJ ruled that the complaint did not allege facts sufficient to show that Montgomery had made disclosures that were protected by the Whistleblower Law.

On 30 November 2000, Montgomery filed a petition for judicial review in the Circuit Court for Somerset County. Following a hearing on 24 July 2001, the judge opined in open court:

"[T]his court agrees [with the ALJ] ... that under the federal Whistleblower Act, which is ... similar to Maryland's Act, [an] employee[']s complain[t] about the behavior of a supervisor is not a protected disclosure. The court is not persuaded that a hostile work environment is a protected disclosure under the Whistleblower Act. And it appears to this court that the Whistleblower statute does not cover the type of conduct that Ms. Montgomery was alleging. The court finds no error as a matter of law.

\* \* \*

"An administrative agency's decision must be reviewed in the light most favorable to the agency since decisions of administrative agencies are prima facie correct and carry with them the presumption of validity. Therefore the court will affirm the decision of the administrative law judge."

After the hearing, by written order, dated 27 July 2001, the Circuit Court affirmed the decision of the ALJ.

In the Court of Special Appeals, Petitioner argued that an allegation of a "hostile work environment" affecting co-workers as well as herself is not the type of personal grievance that is prohibited under federal law from being pursued as a whistleblower complaint. Petitioner also maintained that the Maryland state employee personnel law affords employees who are retaliated against for filing a grievance the option of filing a whistleblower complaint. In addition, Petitioner argued that the ALJ may not dismiss summarily a whistleblower complaint—on the grounds that a "hostile work environment" complaint does not allege an "abuse of authority" as a matter of law—without making factual determinations.

The Court of Special Appeals, in an unreported opinion filed on 23 August 2002, affirmed the Circuit Court's judgment. The intermediate appellate court noted that the purpose of Maryland's Whistleblower Law is the same as the federal WPA from which it derives, that is, to protect government employees who disclose serious government illegality, waste, and corruption. On the issue of whether the subject matter of a personal grievance also can be the subject of a whistleblower complaint, the court found that "[f]ederal cases appear to uniformly hold that only disclosures made outside the grievance procedures are protected disclosures under the federal WPA, and our research has uncovered no authority to the contrary." As such, the court concluded that reprisals based upon a right to complain are not entitled to whistleblower protection. Regarding Petitioner's claim of a right to an election of remedies to file under the Whistleblower Law or the employee grievance procedure, the court held that "a state employee has no such election when, as here, the employee failed to allege facts showing that he or she made a disclosure that was protected under the Whistleblower Act." Finally, the court found Petitioner's contention that further factual determinations by the ALJ were needed, to be unwarranted. The court concluded that there was no dispute as to what Montgomery had disclosed in writing and, therefore, there was no need for a hearing to "develop facts."

## II.

■ Maryland's Whistleblower Law, Maryland Code §§ 5–301 thru 5–313 of the State Personnel and Pensions Article, prohibits a reprisal against a State employee who makes a protected disclosure of "information that the employee reasonably believes evidences: (i) an abuse of authority, gross mismanagement, or gross waste of money; (ii) a substantial and specific danger to public health or safety; or (iii) a violation of law . . . ." Md.Code (1993, 1997 Repl.Vol.), § 5–305(1) of the State Pers. & Pens. Article. The Department, the OAH, the Circuit Court, and the Court of Special Appeals all applied the same legal principles in the present case to conclude that Montgomery's grievance complaining of Acting Warden Kaloroumakis' "derogatory" and "belittling" behavior did not amount to a "protected disclosure" under the Whistleblower Law. As this conclusion is supported by the language of the relevant Maryland statutes and regulations, persuasive federal precedents, and the assertions of Montgomery's grievance itself, we shall affirm.

### A.

■ It is well settled that our role in reviewing an administrative agency adjudicatory decision is narrow, *United Parcel v. People's Counsel,* 336 Md. 569, 576, 650 A.2d 226, 230 (1994); it "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel,* 336 Md. at 577, 650 A.2d at 230. *See also* Md.Code (1984, 1995 Repl.Vol.), § 10–222(h) of the State Gov't Article. "Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency." *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376, 381 (1999). We, therefore, ordinarily give considerable weight to the administrative agency's interpretation and application of the statute that the agency administers. *Lussier v. Md. Racing Comm'n,* 343 Md.

681, 696–97, 684 A.2d 804, 811–12 (1996), and cases there cited; *McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ("The interpretation of a statute by those officials charged with administering the statute is . . . entitled to weight."). Furthermore, the expertise of the agency in its own field of endeavor is entitled to judicial respect. *Fogle v. H & G Restaurant,* 337 Md. 441, 455, 654 A.2d 449, 456 (1995); *Christ v. Dep't of Natural Res.,* 335 Md. 427, 445, 644 A.2d 34, 42 (1994) (legislative delegations of authority to administrative agencies will often include the authority to make "significant discretionary policy determinations"); *Bd. of Ed. For Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625, 634 (1986) ("application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the" legal issues).

## B.

The Maryland Whistleblower Act initially was proposed in 1980 as House Bill (H.B.) 616. The preamble to H.B. 616 stated, in pertinent part:

"The General Assembly finds that the interests of the citizens of Maryland demand a government which operates in accordance with the law and in avoidance of mismanagement, monetary waste, abuse of authority, and danger to public health and safety. In furtherance of these goals, it is essential that classified State employees be free to disclose impropriety in exercise of their constitutional right of free speech.

\* \* \*

"The purpose of this subtitle is to prohibit any State appointing authority from using a personnel action as a retaliatory measure against an employee or applicant for State employment who has made a disclosure of illegality or impropriety." [7]

---

7. Delegate Joan Pitkin, one of the sponsors of H.B. 616, made a statement in support of the bill before the Senate Constitutional and

The parties to this appeal agree that Maryland's Whistle-blower Law is patterned after the whistleblower provisions of the Civil Service Reform Act ("CSRA"). Federal protection of government employees who made certain types of disclosures, most of which were embarrassing to the government, was first provided in the Civil Service Reform Act of 1978.[8] The CSRA, in addition "to setting up an exclusive framework of merit principles and personnel procedures," also "detailed a host of 'prohibited practices,' actions which are prohibited to be taken against employees." *Spruill v. Merit Systems Protection Bd.*, 978 F.2d 679, 682 (Fed.Cir.1992).

In 1989 Congress passed the WPA, Pub.L. Nos. 101–12, 103 Stat. 16 (1989), under which federal employees gained additional protection from retaliatory action due to whistleblowing.[9] Whistleblowers are now protected by provisions set forth in 5 U.S.C. § 2302(b)(8) (2003). The WPA was enacted "for the purpose of protecting federal employees who disclose government illegality, waste, and corruption." *Ellison v. Merit Systems Protection Bd.*, 7 F.3d 1031, 1035 (Fed.Cir.1993) (citing 5 U.S.C. § 1201 note (Supp. III 1991)).

Public Law Committee. In that statement she listed three representative examples of whistleblowing activities resulting in employee firing— the kind of activities that the statute was designed to protect:

Ernest Fitzgerald testified to Congress that a Lockheed cargo plane had a $2 billion cost overrun. Shortly thereafter, his job was abolished.

Dr. Anthony Morris, a native of Maryland, publicly stated that the swine flu vaccine was both useless and dangerous. He was fired by the Food and Drug Administration for insubordination and inefficiency. A few months later, he was proved to be right.

Dr. Stanley Mazaleski, a Ph.D. in preventive medicine, was fired from the National Institute of Occupational Safety and Health for telling Congress and the New York Times about delays in setting standards which imperiled millions of workers, but benefitted industry. He, too, was fired for insubordination and later proved right.

8. For a detailed history of the Civil Service Reform Act of 1978 from its passage until 1982, see *Frazier v. Merit Systems Protection Bd.*, 672 F.2d 150, 154–56 (D.C.Cir.1982).

9. *See* Elleta S. Callahan, *The State of State Whistleblower Protection*, 38 Am. Bus. L.J. 99, 100 (2000).

The WPA substantially changed the role of the OSC [Office of Special Counsel],[10] revised the substantive provisions of the whistleblower defense, and created a new route in whistleblowing cases for employees to take in appealing agency discipline—the Individual Right of Action (IRA). Through the IRA, employees previously excluded from MSPB [Merit Systems Protection Board] review gained access both to the MSPB and the augmented enforcement powers provided through the IRA.

*Spruill,* 978 F.2d at 682 (footnotes omitted).

Section 2302(b)(8) provides, in pertinent part:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

\* \* \*

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs; or

(B) any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures,

---

10. "The OSC is the office specifically charged with investigating allegations of prohibited personnel practices within the federal government." *Spruill v. Merit Systems Protection Bd.,* 978 F.2d 679, 681 (Fed.Cir. 1992).

of information which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. . . .

In 1996, a Maryland gubernatorial task force appointed to study reform of the Maryland State Personnel Management System, filed its report. The report recommended, among other things, numerous changes to the Maryland Whistleblower Law, but § 5–305 remained essentially the same. The General Assembly adopted the task force's suggestions without substantial change.

The language used in § 5–305 of the current Maryland Whistleblower Law is similar to that found in 5 U.S.C. § 2302(b)(8). In language nearly identical to that of the Maryland statute, the federal WPA defines a protected disclosure as "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8) (2003); *see also Ford v. Dep't of Pub. Safety and Corr. Servs.*, 149 Md.App. 488, 501, 817 A.2d 264, 272 (2003) ("Maryland's Whistleblower Statute was patterned after the federal Whistleblower Protection Act"). In such circumstances, it seems appropriate to apply the well settled principle that "where the purpose and language of a federal statute are substantially the same as that of a later state statute, interpretations of the federal statute are ordinarily persuasive." *Fioretti v. Maryland State Bd. of Dental Exam'rs*, 351 Md. 66, 75–76, 716 A.2d 258, 262 (1998).

The U.S. Court of Appeals for the Federal Circuit [11] and the federal Merit Systems Protection Board repeatedly and con-

---

**11.** Under the federal WPA, the U.S. Court of Appeals for the Federal Circuit is the only federal circuit court available for appellate review for whistleblowers in federal workplace cases. 5 U.S.C. § 7703(b) (2003).

sistently have recognized that the federal WPA normally does not encompass complaints by federal government employees that a supervisor's behavior violated the employee's individual employment rights because such complaints do not constitute "protected disclosures" and "whistleblowing." *Serrao v. Merit Systems Protection Bd.*, 95 F.3d 1569 (Fed.Cir.1996) (filing grievance against supervisor is not "whistleblowing"); *Ellison v. Merit Systems Protection Bd.*, 7 F.3d 1031 (Fed.Cir.1993) (grievance complaining of adverse personnel action (failure to promote) does not constitute "whistleblowing"); *Spruill v. Merit Systems Protection Bd.*, 978 F.2d 679 (Fed.Cir.1992) (allegations of reprisals for filing EEOC complaints do not invoke whistleblower protections); *Horton v. Dep't of Navy*, 60 M.S.P.R. 397 (1994) (complaints concerning offensive and inappropriate conduct in the workplace did not reveal or uncover government wrongdoing, and hence were not "whistleblowing"); *Nogales v. Dep't of the Treasury.* 63 M.S.P.R. 460 (1994) (filing grievance alleging discrimination does not constitute "whistleblowing"); *Williams v. Dep't of Defense*, 46 M.S.P.R. 549 (1991) (filing of EEO complaint does not constitute "whistleblowing"); *Fisher v. Dep't of Defense*, 47 M.S.P.R. 585 (1991) (filing of EEO complaint and other internal agency grievances do not constitute "whistleblowing"); *Williams v. Dep't of Veterans Affairs*, 47 M.S.P.R. 578 (1991) (filing of several complaints of discrimination and Title VII lawsuit do not constitute "whistleblowing"); *Peterson v. Dep't of Transportation*, 54 M.S.P.R. 178 (1992) (submitting statement in support of another employee's sexual harassment and sex discrimination complaint does not constitute "whistleblowing"). The results in these cases are all grounded on the principle that Congress, in passing the Civil Service Reform Act, chose to "differentiate between reprisals based on disclosures of information and reprisals based upon a right to complain." *Spruill*, 978 F.2d at 690. "Only the former—described in [5 U.S.C.] § 2302(b)(8)"—are entitled to "whistle blower protection." 978 F.2d at 690–93. Reprisals based upon the assertion of the employee's right to complain are covered only under 5 U.S.C. § 2302(b)(9)(A) (2003) and are not

entitled to WPA protection. *Id.* Section 2302(b)(9)(A) of 5 U.S.C. reads in part as follows:

> (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

> * * *

> (9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of—

> > (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation. . . .

In the *Spruill* case, Roland Spruill, an employee of the Department of Veteran Affairs ("DVA"), brought an Equal Employment Opportunity Commission ("EEOC") complaint against his employer, in which he alleged that his supervisor changed his work hours and in doing so discriminated against him because he was handicapped and black. 978 F.2d at 681. Almost a year after the EEOC complaint was filed, the DVA suspended the employee for abuse of sick leave. Spruill complained to the Office of Special Counsel ("OSC"), contending that the sick leave abuse suspension was made in retaliation for his having filed the EEOC complaint. The OSC declined to investigate on the grounds that complaints alleging discrimination and reprisal for filing an EEOC Complaint—like that filed by Spruill—were "more appropriately resolved through the EEOC process." *Id.* at 682. Spruill then appealed to the federal Merit Systems Protection Board ("MSPB") for review of his three-day suspension, alleging that filing the EEOC complaint was "protected whistleblowing activity" under 5 U.S.C. 2302(b)(8). *Id.* Spruill's appeal was dismissed by an ALJ who found that the MSPB was without jurisdiction. On appeal to the U.S. Court of Appeals for the Federal Circuit, one of the issues presented was whether the filing of an EEOC complaint (the act that triggered the alleged reprisal) was a prohibited act described in 5 U.S.C. 2302(b)(8). The *Spruill* Court held that it was not. *Id.* at 690. The court said that, in enacting sections 2302(b)(8) and (9)(A), Congress chose

to differentiate between reprisal based on disclosure of information and reprisal based upon exercising a right to complain. Only the former—described in § 2302(b)(8)—was termed "whistleblowing" in the debates, although that term was neither employed nor defined in the original statute itself. This understanding of the term was subsequently formalized in the Whistleblower Protection Act of 1989. Congress in the Findings and Purpose section of the Act noted that one of the functions of the CSRA and the OSC was "to protect whistleblowers (those individuals who make disclosures described in such section 2302(b)(8)) from reprisal." 103 Stat. 16, § 2(a)(3) (codified at 5 U.S.C. § 1201, note (Supp. II 1990) (emphasis added)). *See also* 135 Cong. Rec. H750 (daily ed. March 21, 1989) (joint explanatory statement of S. 508, reintroduced in support of S. 20).

*Id.*

The *Spruill* Court continued:

Congress' pervasive references to whistleblowers whose disclosures *saved Government funds or short-circuited potential health and safety hazards* bolster the conclusion that reprisal for filing EEOC complaints falls exclusively within § 2302(b)(9)(A). *See, e.g.,* 135 Cong. Rec. E98 (daily ed. Jan. 4, 1989); 135 Cong. Rec. S2805 (daily ed. March 16, 1989). Such references were even more pointed and pervasive in the legislative history of the 1989 amendment which added the WPA.[12] And that Act itself stated: "Federal employees who make disclosures described in section 2302(b)(8) of title 5, United States Code, serve the public interest by assisting in the elimination of *fraud, waste,*

---

12. The *Spruill* court noted further that

[i]n the course of the debates regarding the [federal] WPA, several Congressmen referred to a concurrent Pentagon procurement scandal, *see, e.g.,* 134 Cong. Rec. S10638 (daily ed. Aug. 2, 1988); 134 Cong. Rec. S15336 (daily ed. Oct. 7, 1988); 135 Cong. Rec. S279 (daily ed. Jan. 25, 1989); references were legion to "waste and fraud," saving tax dollars, and reducing the deficit. One Congresswoman—one of the primary sponsors of the legislation—quipped "I think the bill is misnamed. It should be the taxpayer protection act...." 135 Cong. Rec. H751 (daily ed. March 21, 1989).

*abuse, and unnecessary Government expenditures."* 103 Stat. 16 (codified at 5 U.S.C. § 1201 note (Supp. II 1990)). This is a description of the results of the type of public disclosure generally evoked by the term "whistleblowing," not a description of the results of an individual's complaint about the discriminatory behavior of a particular supervisor. *Id.* at 692 (emphasis added).

Federal cases hold that making a disclosure protected by the WPA fundamentally is different from a government employee complaining about, or grieving, how he or she is treated by his or her supervisor. *See, e.g., Serrao v. Merit Systems Protection Bd.,* 95 F.3d 1569, 1576 (Fed.Cir.1996). The Court of Special Appeals followed this federal precept, in *Ford v. Dep't of Pub. Safety and Corr. Servs.,* 149 Md.App. 488, 501, 817 A.2d 264, 272 (2003), in finding that an employee's complaint in an administrative equal employment opportunity proceeding about alleged sexual harassment towards her by her supervisor did not constitute "protected disclosures" under the Maryland Whistleblower Law.

In the *Ford* case, the complaining employee, Barbara Ford, was employed as a correctional officer by the Department of Public Safety and Correctional Services. Ford claimed she was terminated from employment at the ECI, in violation of Maryland's Whistleblower Law, in retaliation for filing charges against her supervisor. 149 Md.App. at 501, 817 A.2d at 272. Ford argued that federal authorities have been loath to permit federal employees who were retaliated against for filing grievances to proceed with a federal WPA complaint because, unlike Maryland, there is a separate statutory remedy under federal law addressing such retaliation. 149 Md. App. at 502, 817 A.2d at 272–73. The Court of Special Appeals affirmed the circuit court and ALJ, finding that Ford's argument ignored the fact that Maryland law also provides remedies specifically for addressing employee complaints alleging violations of employment rights and reprisals for making such complaints. *Id. See, e.g.,* Md.Code (1993, 1997 Repl.Vol.), § 12–103 of the State Pers. & Pens. Article (providing exclusive remedy by which employee may pursue

claim of reprisal); Md.Code (1957, 2003 Repl.Vol.), Art. 49B, § 16(f) (prohibiting discrimination against employee for making charge of discrimination to Maryland Human Relations Commission or testifying, assisting, or participating in a proceeding of the commission).

In the present case, Petitioner adopts the argument that was rejected by the Court of Special Appeals in *Ford* and contends there are

> [s]ignificant differences between the two statutory schemes—state and federal—which militate against imposing a federally derived exception upon the Maryland Whistleblower Law. The WPA, 5 U.S.C. § 2302(b)(8), is merely a part of a broad-based statute (5 U.S.C. § 2302) prohibiting various discriminatory or unfair management practices. Under 5 U.S.C. § 2302(b)(8), Title VII—style discrimination (5 U.S.C. § 2302(b)(1)) and grievance-generated reprisals (5 U.S.C. § 2302(b)(9)), are identified separately, proscribed separately and addressed separately. By contrast, the Maryland Whistleblower Law is a "stand-alone" statute and does not draw any of the distinctions made in 5 U.S.C. § 2302(b). Thus, while it arguably makes sense to require [f]ederal employees who have been retaliated against for filing grievances to pursue claims under 5 U.S.C. § 2302(b)(9), and not under the Whistleblower provision, 5 U.S.C. § 2302(b)(8), there is no logical or pragmatic basis for imposing such an exception upon the Maryland Whistleblower Law.

It is true, as Petitioner argues, that the federal statutes separately address and prohibit different specific types of discriminatory management practices, but it is also true, contrary to Petitioner's argument, that Maryland statutes do the same in parallel fashion. *See* Md.Code (1993, 1997 Repl.Vol.), § 2–302 of the State Pers. & Pens. Article (identifying, addressing, and prohibiting discrimination on the basis of age, race, religion, or sex); Md.Code (1993, 1997 Repl.Vol.), §§ 5–210 *et seq.* of the State Pers. & Pens. Article (providing specific remedial procedures for complaints of discrimination); Md.Code (1993, 1997 Repl.Vol.), § 2–305 of the State Pers. &

Pens. Article (identifying, addressing, and prohibiting reprisals against State employees for grievances or complaints); Md.Code (1993, 1997 Repl.Vol.), §§ 12–101 *et seq.* of the State Pers. & Pens. Article (providing specific and exclusive remedial procedures for grievances and complaints of reprisal for filing grievances). Thus, the remedial Maryland statutory scheme that is available to aggrieved State employees is similar to the statutory protection afforded to their federal counterparts.

Maryland's version of the federal WPA is not, as Petitioner contends, "a stand-alone statute." It must be read in conjunction with §§ 2–302 and 12–103 of the State Personnel and Pensions Article. Section 12–103 provides:

**Right to bring grievance; exclusiveness of remedy.**

(a) *Right to bring grievance.*—An employee with a grievance or the grievant's representative may present the grievance free from coercion, discrimination, interference, *reprisal, or restraint.*

(b) *Remedy exclusive.*—Unless another procedure is provided for by this article, *the grievance procedure is the exclusive remedy* through which a nontemporary employee in the State Personnel Management System may seek an administrative remedy for violations of the provisions of this article.

(emphasis added).

Section 2–302 of the State Personnel and Pensions Article provides in relevant part:

**Discrimination, harassment prohibited.**

(a) *Purpose.*—The State recognizes and honors the value and dignity of every person and understands the importance of providing employees and applicants for employment with a fair opportunity to pursue their careers in an environment free of discrimination or harassment prohibited by law.

(b) *Personnel actions.*—(1) Except as provided in paragraph (2) of this subsection or by other law, all personnel actions concerning a State employee or applicant for em-

ployment in State government shall be made without regard to:

 (i) age;

 (ii) ancestry;

 (iii) color;

 (iv) creed;

 (v) marital status;

 (vi) mental or physical disability;

 (vii) national origin;

 (viii) race;

 (ix) religious affiliation, belief, or opinion; or

 (x) sex.

(2) A personnel action may be taken with regard to age, sex, or disability to the extent that age, sex, or physical or mental qualification is required by law or is a bona fide occupational qualification.

(c) *Responsibilities of employees, managers and supervisors; penalties for violation of subtitle.*—(1) Each State employee is expected to assume personal responsibility and leadership in ensuring fair employment practices and equal employment opportunity in Maryland State government.

(2) Employment discrimination and harassment by State managers, supervisors, or other employees is prohibited.

(3) A State employee who violates this subtitle is subject to disciplinary action by the employee's appointing authority, including the termination of State employment.

Persons who file grievances in which they complain about "harassment" are protected from retaliation, by virtue of the provisions of §§ 2–302 and 12–103(a), for any disclosure they make to their supervisors during the grievance procedure.[13]

---

13. There is good reason for the General Assembly to have structured the Whistleblower Law and personnel grievance procedures in the manner it did. A policy of avoiding duplication of effort by keeping personnel disputes between supervisors and employees within the State grievance procedures conserves government resources and avoids po-

The rights accorded to grievants under Maryland law are closely analogous to the rights granted to federal employees under 5 U.S.C. § 2302(b)(9)(A). Thus, the ALJ, the Circuit Court, and the Court of Special Appeals in the present case were correct to be persuaded by federal precedent and to hold that an alleged reprisal by a supervisor against an employee for filing a personnel grievance about that supervisor is not protected under Maryland's Whistleblower Law.

 Even though we disagree with Montgomery's arguments in the present case, we appreciate the practical objectives that animate them. There is a significant distinction between the two remedies. Maryland's Whistleblower Law provides for a potential award of statutory attorney's fees. Md.Code (1993, 1997 Repl.Vol.), § 5–310(d)(2) of the State Pers. & Pens. Article (award of attorney's fees available after proceedings before OAH); Md.Code (1993, 1997 Repl.Vol.), § 5–311 of the State Pers. & Pens. Article (award of attorney's fees available after proceedings for judicial review). The State employee grievance procedure, however, does not provide for statutory attorney's fees. Md.Code (1993, 1997 Repl. Vol.), §§ 12–101 thru 12–205 of the State Pers. & Pens. Article. The availability of an award of statutory attorney's fees ("fee-shifting") is a deviation from the "American Rule" that attorney's fees are to be borne by the party that incurs them, irrespective of the outcome of the case. *See Caffrey v. Dep't of Liquor Control*, 370 Md. 272, 292, 805 A.2d 268, 280 (2002) (pursuant to the American Rule, as a matter of substantive law, damages do not include counsel fees); *Megonnell v. United Services Auto. Ass'n*, 368 Md. 633, 659, 796 A.2d 758, 774 (2002) ("This State adheres to the 'American Rule' which generally requires that each party be responsible for their own counsel fees."). Typically, fee-shifting provisions accompany a statutory cause of action prosecuted by a "private attorney general" addressed to an area of public interest or concern, such as, for example, gaining access, over govern-

---

tentially conflicting procedures or outcomes. In short, it promotes efficiency and economy.

mental objection, to public records under the Public Information Act, Maryland Code (1984, 1999 Repl.Vol.), § 10–623(f) of the State Government Article (providing for the assessment against a violating governmental unit of "reasonable counsel fees"); accountability in charitable solicitations, Maryland Code (1992, 1998 Repl.Vol.), § 6–509(b)(3) of the Business Regulation Article (providing for the assessment against a violating charitable organization of "reasonable attorney's fees"); or, the remediation of fraudulent or anti-competitive business practices under the State's antitrust laws, Maryland Code (1975, 2000 Repl.Vol., 2003 Cum.Supp.), § 11–209(b)(3) and (4) of the Commercial Law Article (providing for an award against a violating business of "reasonable attorney's fees). The lack of any provision for an award of attorney fees to a prevailing employee under the State personnel grievance procedures is some evidence of a lack of a public interest prerequisite in that statutory scheme.

### C.

It is not the case, as argued by Petitioner in her brief here, that the Court of Special Appeals held that "no personnel grievance could qualify for protection under the Maryland Whistleblower Law," or that the intermediate appellate court "adopted a sweeping new standard by which it would exclude grievances from whistleblower protection." Rather, the court held, on the facts of this case, that Montgomery's personnel grievance "did not allege mismanagement of the warden's office—gross or otherwise," or "reveal facts that show he [either Acting Warden Kaloroumakis or Warden Kupec] was guilty of an abuse of authority." [14]

Montgomery contends that the Court of Special Appeals erred in finding that her "Whistleblower" complaint did not

---

14. We acknowledge that there may be circumstances under which disclosures made by an employee in a grievance could constitute disclosures protected by § 5–305 of the Whistleblower Law; the particular disclosures about her supervisor that Montgomery made, however, were not of the type that the Whistleblower Law was intended to protect.

disclose facts revealing that Acting Warden Kaloroumakis, pursuant to § 5–305(1) of the Maryland Whistleblower Law, was guilty of both "gross mismanagement" and "an abuse of authority." Montgomery augments the argument she made in the intermediate appellate and circuit courts by now also claiming that "it is clear she has asserted a "violation of law" ... [because] her boss violated the Code of Fair Employment Practices." [15] Petitioner does not contend that her "Whistleblower" complaint disclosed facts that evidenced "gross waste of money" or "a danger to public health or safety." To ascertain the meaning of "gross mismanagement," "abuse of authority," and "violation of law," we look again to analogous federal cases.

The federal Merit Systems Protection Board ("MSPB") defines, for purposes of the federal WPA, "gross mismanagement" as "a management action or inaction that creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission." *Pulcini v. Social Security Admin.*, 2000 WL 772728, \*2, 2000 U.S.App. LEXIS 13567, \*5 (Fed. Cir. June 13, 2000) (citing *Embree v. Dep't of the Treasury*, 70 M.S.P.R. 79, 85 (1996)). Gross mismanagement "does not include management decisions that are 'merely debatable' and requires 'more than de minimis wrongdoing or negligence.'" *Id.* "[L]egislative history of the [federal] WPA indicates that Congress changed the term 'mismanagement' in the CSRA to 'gross mismanagement' in the [federal] WPA to establish a de minimis standard for disclosures of mismanagement by protecting them only if they involved more than 'trivial matters.'" *D'Elia v. Dep't of the Treasury*, 60 M.S.P.R. 226, 236 (1993) (citing S.Rep. 413, 100th Cong.2d Sess. 13.). *See also Nafus v. Dep't of the Army*, 57 M.S.P.R.

---

**15.** Montgomery has not provided any evidence or authority to establish that the Executive Order at COMAR 01.01.1995.19 (*See n.2* above) is a "law" within the meaning of the Whistleblower Law. For the purposes of argument, however, we shall assume that the Executive Order is a law. *See* 64 Op. Att'y Gen. 180 (1979) (The Attorney General of Maryland has opined that an Executive Order issued by the Governor has the force of law as long as it is not inconsistent with an existing statute.).

386, 395–96 (1993) (legislative history of the federal WPA shows that Congress intended the change from "mismanagement" to "gross mismanagement" to reflect something blatant or out of the ordinary).

Reading Montgomery's grievance in the light most favorable to her, she did not allege mismanagement of the Warden's Office at the ECI—gross or otherwise. Rather, she alleged that Kaloroumakis's discourteous words created a "hostile" work environment, which, in turn, created a hostile work place that was "detrimental to her career" and to the career of others. She did not allege facts showing "a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission." *Pulcini*, 2000 WL 772728, at *2, 2000 U.S.App. LEXIS 13567, at *6. The fact that Kaloroumakis may have been rude and discourteous to one or two employees who worked under his supervision reveals nothing as to whether he otherwise efficiently fulfilled his management duties as Acting Warden.

The MSPB defines an "abuse of authority" as "the arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons." *McCollum v. Dep't of Veterans Affairs*, 75 M.S.P.R. 449, 455 (1997) (citations omitted). Examples of abuse of authority provided in *D'Elia*, above, included misuse of government equipment or knowing approval of falsified time sheets. *See D'Elia*, 60 M.S.P.R. at 237–38.

Measured against the definition of "abuse of authority" from *McCollum*, Montgomery's disclosures in her personnel grievance concerning Kaloroumakis's behavior, if true, do not reveal facts that support an abuse of authority conclusion. When Kaloroumakis allegedly spoke and acted discourteously, he was not "exercising power" in the sense meant by the Maryland (or federal) Whistleblower statutes. Montgomery's complaint, at best, can be characterized as allegations that the Acting Warden was guilty of harassment of Montgomery. Protection against harassment by supervisors (and against

retaliation for making disclosures of harassment) is provided for in Maryland Code §§ 12–101, *et seq* of the State Personnel and Pensions Article. In addition, revelations of rude behavior and the like were not the type of disclosure that the Whistleblower Law was intended to remedy, as evidenced by the language used in the Whistleblower Law's preamble evincing that the Maryland Act's purpose was to protect employees who disclose "illegality or impropriety." The types of illegality and impropriety that the Whistleblower Law was designed to protect against were of the public sort, *see n.7, above*, not the type of individual or idiosyncratic harassment disclosed in Montgomery's grievance. Like the federal WPA, the Maryland Whistleblower Law was "intended to root out real wrongdoing" and not the relatively minor misconduct of persons who happen to be cloaked with management authority. *See Herman v. Dep't of Justice*, 193 F.3d 1375, 1381 (Fed.Cir.1999) (citation omitted).

Concerning the "violation of law" disclosure protected by the federal WPA, the MSPB requires that an employee have a reasonable belief that he or she is disclosing such a violation. *Ramos v. Dep't of the Treasury*, 72 M.S.P.R. 235 (1996); *see also* 5 U.S.C. § 2302(b)(8)(A) (2003). "The test for whether the appellant had a reasonable belief that his disclosure evidenced a violation is an objective one, and he must prove that a reasonable person in his position would believe the disclosure evidences a violation." *Id.* (citation omitted). In the present case, Montgomery's allegations essentially evidence a conflict between two parties: Kaloroumakis and herself. The allegations of wrongdoing set forth in the grievance and "Whistleblower" complaint are fundamentally a government employee complaining about, or grieving, how she was treated by her supervisor and how he may have violated the Code of Fair Employment Practices in relation to her. Montgomery's concern about Kaloroumakis' behavior apparently was not moved by a concern for the public well being, but understandably for herself and her career. Any alleged "violation of law" in this context is not whistleblowing. *See Ford*, 149 Md.App. at 502, 817 A.2d at 272 (an employee's grievance about a

supervisor's behavior towards that employee is not a protected disclosure). Were it otherwise, almost any personnel grievance might qualify as an "abuse of authority" or a "violation of law" under the Whistleblower Law. To read the Whistleblower Law as including all activities encompassed by Maryland Code §§ 12–101 thru 12–205 of the State Personnel and Pensions Article would render Maryland's grievance procedures largely irrelevant, if not totally superfluous.

### D.

Petitioner argues that "[o]ther states have afforded grievances Whistle Blower Protection under their statutory schemes." Petitioner cites only one state case for this broad assertion and we have found no other cases that afford Whistleblower protection to cases filed as personnel grievances by employees against their supervisors. Petitioner cites *Appeal of Leonard,* 147 N.H. 590, 809 A.2d 762 (2002), but offers no elaboration of why the *Leonard* case is relevant and makes no attempt to apply *Leonard* to the facts before us. It is not at all clear to us that the *Leonard* case is on point or offers any pertinent guidance in the present case.

The *Leonard* court construed the New Hampshire whistleblower statute, a statute applicable to all employers in the State, public and private. The New Hampshire statute does not appear to have been patterned after its federal counterpart. Section two of the New Hampshire Whistleblower Protection Act provides:

I. No employer shall discharge, threaten, or otherwise discriminate against any employee regarding such employee's compensation, terms, conditions, location, or privileges of employment because:

(a) The employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of any law or rule adopted under the laws of this state, political subdivision of this state, or the United States; or

(b) The employee, in good faith, participates, verbally or in writing, in an investigation, hearing, or inquiry conducted by any governmental entity, including a court action, which concerns allegations that the employer has violated any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States.

II. Paragraph I of this section shall not apply to any employee unless the employee first brought the alleged violation to the attention of a person having supervisory authority with the employer, and then allowed the employer a reasonable opportunity to correct that violation, unless the employee had specific reason to believe that reporting such a violation to his employer would not result in promptly remedying the violation.

RSA 275–E:2 (2002).

In the *Leonard* case, Barry Leonard, a fuel oil delivery truck driver, refused to work on Sunday and complained to the president of the oil company. 809 A.2d at 764. The oil company told Leonard that if he refused to work Sunday he should return the truck and he would be fired. In response, Leonard dropped off his truck and never returned to work. *Id.* The *Leonard* court concluded that Leonard had "blown the whistle" by reporting to the oil company's president the company's alleged violation of the New Hampshire "day of rest" statute.[16] 809 A.2d at 767. In effect, the court concluded the employee "blew the whistle" on an irresponsible and hazardous requirement of his employer by reporting that commercial truck drivers were being forced to drive seven days a week while too tired, in violation of a New Hampshire employment statute mandating a day of rest. 809 A.2d at

---

**16.** New Hampshire's "day of rest" statute states:

No employer shall operate any such business on Sunday unless he has posted in a conspicuous place on the premises a schedule containing a list of employees who are required or allowed to work on Sunday and designating the day of rest for each. . . . No employee shall be required or allowed to work on the day of rest designated for him.

RSA 275:33 (2002).

764–67. Although in *Leonard* there is a public interest in addressing the dangers attributable to driver drowsiness or fatigue, there is no such public interest in Montgomery's case which involves an employee complaining about the allegedly discriminatory behavior towards her by her supervisor. In addition, we are not persuaded that the New Hampshire Whistleblower Act, the purpose of which is to "promote the informal resolution of such reports within the workplace" and is applicable to every employer in New Hampshire, is any way analogous to Maryland's Whistleblower Act for state employees. 809 A.2d at 767.

## E.

Montgomery penultimately argues also that she should be able to avail herself of the Whistleblower statute because

[t]he efficacy of the grievance procedure in redressing wrongs whose infliction was prompted by the filing of another grievance is dubious: the three steps of the grievance procedure are entirely intra-agency, where there is a substantial risk that the supervisors who retaliated against the original grievance would simply do it again; although the grievant may then appeal to the Office of Administrative Hearings, (see SPPA § 12–205), that appeal only follows a decision by the Secretary of the grievant's agency. While administrative law judges do on occasion reverse the decisions of cabinet-level officials, the usual inclination is simply to extend deference to the decision of the Secretary.

Montgomery provides no factual, statistical, or legal basis for this argument. Montgomery's argument ignores the fact that the State employee grievance procedures are the procedures specified by the General Assembly as a state employee's exclusive remedy under the circumstances of this case. Md. Code (1993, 1997 Repl.Vol.), § 12–103(b) of the State Pers. & Pens. Article. Moreover, Petitioner's unsubstantiated skepticism as to "the usual inclination" of the OAH's ALJ's fails to acknowledge the oversight of independent judicial review available for the final decision of an ALJ (or the agency).

Md.Code (1984, 1999 Repl.Vol.), § 10–222(a) of the State Gov't Article.

### F.

■ Finally, Montgomery argues that she had a right to an election of remedies to proceed either under the Whistleblower Law, §§ 5–301 *et seq.*, or to file an employee grievance procedure under §§ 12–101 *et seq.*[17] While it is true that a whistleblower who complains of reprisal for a protected disclosure can elect to proceed either under the Whistleblower Law or the State employee grievance procedures, a State employee complaining of harassment by a supervisor has no such election of remedies available. *See* Md.Code (1993, 1997 Repl. Vol.), § 12–103(b) of the State Pers. & Pens Article (providing that State employee grievance procedures are the exclusive remedy for a claim of reprisal for filing a grievance). Montgomery filed a grievance complaining of alleged discriminatory behavior and harassment by her supervisor that affected her and was a grievance within the ambit of the "Grievance Procedures in the State Personnel Management System." Md.Code (1993, 1997 Repl.Vol.), §§ 12–101 *et seq.* of the State Pers. & Pens Article. We hold that a state employee has no such election when, as here, the employee failed to allege facts showing that he or she made a disclosure that was protected under the Whistleblower Law.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

---

**17.** Other than the entity that investigates and acts on the employee's complaint, the only advantage of proceeding under § 5–301 is that, if a worker wins, he or she would be entitled to attorney's fees. *See* page 637, above.